**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARISELA TORRES SMITH, as**
**Administrator of the Estate of**
**ALEXANDER JOSE NUNEZ**
**GONZALEZ,,**

                    **Plaintiff,**

**-vs-**                                                **Case No. 6:10-cv-274-Orl-31KRS**

**CESSNA AIRCRAFT COMPANY,**

                    **Defendant.**
_____/

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 56) filed by the Defendant, Cessna Aircraft Company ("Cessna"), the response (Doc. 71) filed by the Plaintiff, Marisela Torres Smith, and the reply (Doc. 100) filed by Cessna.

The Plaintiff is the administrator of the estate of Alexander Jose Nuñez Gonzalez, who was killed in the crash of a Cessna Citation III on February 18, 2008. The Plaintiff contends that the crash was caused in part by the plane's Actuator Control Unit ("ACU"). More particularly, the ACU includes a monitor intended to detect wear in another component, known as the "no-back brake," which was part of the plane's Horizontal Stabilizer Trim Assembly. The Plaintiff asserts that the monitor in the ACU failed to detect wear in the no-back brake, which eventually failed, causing the nose of the aircraft to pitch down, resulting in a crash.

Cessna seeks summary judgment based upon the eighteen-year statute of repose contained in the General Aviation Revitalization Act ("GARA")[1]. Subject to certain exceptions not applicable here, GARA provides that

> no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft in its capacity as manufacturer if the accident occurred –
>
> (1) after the applicable limitation period beginning on –
>
> (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer.

GARA § 2(a).

It is undisputed that the Citation III at issue in this case was a "general aviation aircraft" for purposes of GARA, and that Cessna manufactured it and delivered it to its first owner in November 1987 – more than twenty years prior to the crash. GARA's limitation period for general aviation aircraft is eighteen years.

However, GARA's eighteen-year limitation period "rolls over" – or recommences – as to "any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage". GARA § 2(a)(2). It is undisputed that the owner of the Cessna replaced the plane's original ACU with one of a new design on July 26, 2006.

---

[1] Pub.L. No. 103-298, 108 Stat. 1552 (1994), *as amended by* Pub.L. No. 105-102, § 3(e), 111 Stat. 2215 (1997) (codified at 49 U.S.C. § 40101 note (1997)).

It is this replacement ACU that, according to the Plaintiff, was one of the causes of the crash in February 2008.

The parties agree that the replacement ACU was designed and manufactured by KGS Electronics, a third party.  The Plaintiff asserts that Cessna was a co-designer of the replacement ACU and that such design is part of the manufacturing process, making Cessna a co-manufacturer of the allegedly defective part.  The parties sharply disagree as to Cessna's involvement in the design process, and the legal consequences of that involvement.

But the Plaintiff also alleges that Cessna should be held liable in this case because on July 24, 2006 it sold the replacement ACU to Southern Jet Center LLC ("Southern Jet"), which installed it on the Citation III two days later.  Cessna does not dispute the contention that it sold the new ACU to Southern Jet, or that the Plaintiff has asserted a strict liability claim against it on the basis of this sale. But Cessna argues that GARA still protects it.  In support of this contention, Cessna relies on the following passage from the House Judiciary Committee notes on GARA:

> For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such act was a proximate cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic.

H.R. Rep. No. 103-5625(II), at 6 (1994).  Cessna argues that this passage shows that Congress intended that GARA "should still shield manufacturers when they are sued in an incidental role that created no additional risk." (Doc. 83 at 7).  Cessna argues that its sale of the part created no additional risk, and therefore it should be shielded from liability.  There are several problems with Cessna's argument, however.  First, as to the replacement ACU, Cessna insists that it was *not* the manufacturer.  (As noted above, if Cessna manufactured the replacement ACU, then GARA's

limitation period would have restarted when it was installed.)  Thus, even if Congress intended that GARA "shield manufacturers when they are sued in an incidental role," it would not have intended to shield this Defendant with regard to this new part.

More to the point, the quoted text does not at all suggest that Congress intended to shield manufacturers facing liability for doing something other than manufacturing the aircraft or part at issue.  It suggests the opposite – *i.e.*, that GARA *only* protects manufacturers when they are sued in that role.  This is also clear from the plain language of the act, which prohibits claims "against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft in its capacity as manufacturer".  GARA § 2(a) (emphasis added).  Here, Cessna is being sued in its capacity as seller of the new part, and therefore GARA does not bar this suit.

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 100) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 19, 2011.

Copies furnished to:

Counsel of Record
Unrepresented Party